IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MIMICS, INC., RICHARD WILDGRUBE
and MARGARET WILDGRUBE,
individually,

        Plaintiffs,

vs.                                                             CIV No. 99-00839 MV/ACT

THE VILLAGE OF ANGEL FIRE,
CHARLES HASFORD, individually,
MARY FRANCES McKINLEY,
individually, and GARY STANSBURY,
individually,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs' Objections to Magistrate Judge's Decision of 12 April 2001 Regarding Disclosure of Plaintiffs' Client List, filed April 13, 2001, **[Doc. No. 112]**. The Court, having considered the objections, relevant law and being otherwise fully informed, finds that the objections are well-taken and will be **SUSTAINED in part**.

## BACKGROUND

Plaintiffs, who provide software to financial institutions, contend that Defendants' wrongful actions disrupted Plaintiffs' business. As a result of this disruption, Plaintiffs assert that they were unable to develop a Windows-based version of their software (which would have been Y2K compliant) and, instead, had to make their DOS-based software Y2K compliant. Plaintiffs seek damages, in part, for the costs they incurred to make their DOS-based software Y2K compliant. Defendants moved to compel production of a list of Plaintiffs' clients. In their motion to compel, Defendants contended that a list of Plaintiffs' clients was necessary to determine if Plaintiffs had lost

any clients due to the alleged business disruption and to determine if it was necessary for Plaintiffs to prepare Y2K compliant DOS software.  Plaintiffs opposed the production of their client list on the grounds that Plaintiffs were not claiming either loss of profits or loss of customers, that disclosure of their client list could affect the competitiveness of Plaintiffs' product, and, that permitting Defendants to contact Plaintiffs' clients could irreparably damage Plaintiffs' business relationships with these clients.  On April 12, 2001, the magistrate judge granted Defendants' motion to compel production of Plaintiffs' client list, finding that the requested information was necessary for Defendants to defend against the damages sought by Plaintiffs.  Plaintiffs hereby object to the magistrate judge's order.

## STANDARD OF REVIEW

A district court may modify or set aside a ruling of a magistrate judge only if it is "clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a).  Under the clearly erroneous standard, the reviewing court must affirm unless the court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

## ANALYSIS

As an initial matter, the Court notes that Defendants did not file a response to Plaintiffs' objections.  Failure to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion.  D.N.M.LR-Civ. 7.1(b).

Rule 26(b)(1) provides that parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  Upon motion by a party, and for good cause shown,

the Court may make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including an order that a trade secret or other confidential commercial information not be revealed or be revealed only in a designated way. Fed. R. Civ. P. 26(c)(7). To resist discovery under Rule 26(c)(7), a person must first establish that the information sought is a trade secret or other confidential commercial information and then demonstrate that disclosure of the information might be harmful. *See* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2043 at 301 (1970). If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of this information is relevant and necessary to the action. *Id*. at 301-02; *Centurion Indus., Inc. v. Warren Steurer and Assoc.*, 665 F.2d 323, 325 (10th Cir. 1981); *Hartley Pen Co. v. United States Dist. Court*, 287 F.2d 324, 331 (9th Cir. 1961).

Under Rule 26(c)(7), the Court must balance the need for the trade secrets or confidential information against the claim of injury resulting from disclosure. *Centurion Indus., Inc*., 665 F.2d at 325*; Covey Oil Co*., 340 F.2d at 999. If the trade secrets are deemed relevant and necessary, the Court must determine the appropriate safeguards that should attend their disclosure. If proof of relevancy or need is not established, however, discovery should be denied. *See id*. at 326; *Covey Oil Co*., 340 F.2d at 998-99; *Cleo Wrap Corp. v. Elsner Eng'g Works, Inc*., 59 F.R.D. 386, 388 (M.D. Pa. 1973); *Hartley Pen Co*., 287 F.2d at 330-31.

The magistrate judge assumed, without deciding, that Plaintiffs had met their burden to demonstrate that the client list was a trade secret and that the disclosure of the client list might harm Plaintiffs. The magistrate judge went on to find that Defendants had established that the client list was relevant and necessary to the action because Defendants needed to ascertain 1) whether Plaintiffs' clients were planning to stay with Plaintiffs' software product through

December 31, 1999; 2) if Plaintiffs charged their clients for the Y2K compliant DOS-based software; and 3) whether Plaintiffs' clients intended to stay with Plaintiffs' DOS product rather than purchase Plaintiffs' proposed Windows-based product.

Although never explicitly stated, there are actually two separate questions raised in Plaintiffs' objections. The first question is whether Plaintiffs should be required to disclose their client list to Defendants. The second question is whether Defendants should be permitted to contact Plaintiffs' clients. The magistrate judge determined that Plaintiffs must disclose their client list and, while not directly addressing the question, put no restrictions on Defendants' contact with Plaintiffs' clients.

    1.    Plaintiffs' Client List

Based on the entire evidence, the Court agrees that Plaintiffs must provide a list of their clients to Defendants. Defendants have demonstrated that certain information about Plaintiffs' clients, including whether any clients continued using Plaintiffs' software after December 31, 1999, and whether Plaintiffs charged clients for the Y2K update, is relevant to their defense. While, as discussed below, Defendants can obtain this information directly from Plaintiffs' records, having Plaintiffs' client list may assist Defendants in verifying and corroborating Plaintiffs' records and testimony. Defendants have demonstrated that the list is relevant and necessary and any potential harm to Plaintiffs from disclosure of this list can be eliminated by a confidentiality agreement.

    2.    Contacting Plaintiffs' Clients

Based on the entirety of the evidence, the Court finds that allowing Defendants to contact Plaintiffs' clients was clearly erroneous because Defendants did not establish that contact with Plaintiffs' clients is relevant and necessary to this action. Based on the record, it appears that Defendants' questions can be answered through Plaintiffs' records and testimony without any

contact between Defendants and Plaintiffs' clients.

Defendants first assert that they need to contact Plaintiffs' clients to ascertain whether a client was planning to continue using Plaintiffs' software through December 31, 1999, because, if a client did not intend to continue using Plaintiffs' software after December 31, 1999, the Y2K update was not necessary. Defendants, however, can determine from Plaintiffs' records if clients continued using Plaintiffs' software after December 31, 1999. Furthermore, whether a particular client continued using Plaintiffs' software after December 31, 1999, appears to be irrelevant.[1] If at least one customer intended to use Plaintiffs' software after December 31, 1999, the Y2K update was necessary.

Defendants also contend that they need to contact Plaintiffs' clients to determine if any of Plaintiffs' clients would have continued using Plaintiffs' DOS-based software after December 31, 1999, if a Windows-based version had been available. According to Defendants, if any clients would have continued to use the DOS-based version, the Y2K update of the DOS-based software was necessary regardless of Plaintiffs' plans for a Windows-based software. There is no evidence that Plaintiffs were obligated to continue offering or supporting their DOS-based software after they switched to Windows-based software. If Plaintiffs could discontinue offering or supporting their DOS-based software when they switched to Windows-based software, the fact that some of their current clients would have wanted to continue using a DOS product, at most, proves that Plaintiffs

---

[1] It is unclear from the record if Plaintiffs had to make each individual client's software Y2K compliant or if Plaintiffs simply had to make their global software programs Y2K compliant. Based on Plaintiffs' statements that the costs of the making their DOS-based software Y2K compliant were completely independent of their clients, the Court assumes it is the latter. *See* Plaintiffs' Objections at p. 2 ("the cost of making the DOS software Y2K compliant . . . has nothing to do with the identity of the customers. Whether some customers would have abandoned the product would not militate against the development costs.").

may have lost some clients if they had switched to a Windows-based program at that time. The relevant inquiry--whether Plaintiffs would have made their DOS-based software Y2K compliant for any clients who wanted to continue using DOS-based software instead of a Windows-based software--can only be answered by Plaintiffs.

Finally, whether Plaintiffs charged their clients for the Y2K compliant software can be determined from Plaintiffs' records. In fact, Plaintiffs assert that they have already provided evidence that they were contractually obligated to make their software Y2K compliant and that they did not charge clients for making their software Y2K compliant.

Because the information Defendants seek to obtain from Plaintiffs' clients appears to be available from an alternative source, Defendants have failed to demonstrate that contact with Plaintiffs' clients is necessary to develop their defenses much less that Defendants' need to contact Plaintiffs' clients outweighs the potential harm to Plaintiffs' business interests from such contact.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Objections to Magistrate Judge's Decision of 12 April 2001 Regarding Disclosure of Plaintiffs' Client List, filed April 13, 2001, **[Doc. No. 112]** are **SUSTAINED in part**. Plaintiffs must produce a list of clients for whom Plaintiffs created Y2K compliant DOS-based software. Plaintiffs' client list will be kept strictly confidential and Defendants may not contact any of Plaintiffs' clients.

Dated this 22nd day of March, 2005.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Attorney for Plaintiffs:

6

Michael Schwarz

<u>Attorney for Defendants</u>:
James P. Sullivan
Randy S. Bartell