IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MIMICS, INC., RICHARD WILDGRUBE
and MARGARET WILDGRUBE,
individually,

        Plaintiffs,

vs.                                                                      CIV No. 99-00839 MV/ACT

THE VILLAGE OF ANGEL FIRE,
CHARLES HASFORD, individually,
MARY FRANCES McKINLEY,
individually, and GARY STANSBURY,
individually,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion in Limine to Exclude Testimony of David M. West, Ph. D., filed November 21, 2001, **[Doc. No. 196]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion will be **GRANTED in part and DENIED in part**.

## BACKGROUND

Plaintiffs, who provide software to financial institutions, contend that Defendants' wrongful actions disrupted Plaintiffs' business. As a result of this disruption, Plaintiffs assert that they were unable to develop a Windows-based version of their software (which would have been Y2K compliant) and, instead, had to make their DOS-based software Y2K compliant. Plaintiffs seek damages, in part, for the costs they incurred to make their DOS-based software Y2K compliant. Plaintiffs named Dr. David M. West as an expert to support their claim that Defendants' conduct caused Plaintiffs to incur expenses to make their DOS software programs Y2K compliant rather

than develop Windows-based software as planned.  In this motion, Defendants seek to exclude Dr. West's proposed testimony on the grounds that it does not meet the requirements for admissible expert testimony set forth in Rule 702 of the Federal Rules of Evidence.  Specifically, Defendants contend that Dr. West's proposed testimony is speculative, without scientific support, and irrelevant.

## ANALYSIS

Rule 702 sets forth the standard for admission of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786 (1993), the Supreme Court interpreted this rule in the context of scientific evidence, holding that Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  The requirements of reliability and relevance were extended by *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167 (1999), to all expert testimony.

The purpose of *Daubert* gatekeeping is "to undertake whatever inquiry is necessary to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"  *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1243 (10th Cir. 2000) (quoting *Kumho Tire*, 526 U.S. at 152).  Accordingly, a trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology

employed in reaching those conclusions. *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786.

In determining whether the expert's reasoning or methodology is valid, the Supreme Court has suggested that a trial court consider: (1) whether a theory has been or can be tested or falsified, (2) whether the theory or technique has been subject to peer review and publication, (3) whether there are known or potential rates of error with regard to specific techniques, and (4) whether the theory or approach has "general acceptance." *Daubert*, 509 U.S. at 593-94, 113 S.Ct. 2786. The Supreme Court has made clear, however, that this list is neither definitive nor exhaustive and that a trial court has wide discretion both in deciding how to assess an expert's reliability and in making a determination of that reliability. *Kuhmo Tire Co.*, 526 U.S. at 150, 152-53, 119 S.Ct. 1167; *see also United States v. Velarde*, 214 F.3d 1204, 1208-09 (10th Cir. 2000).

Second, in fulfilling its *Daubert* obligations, a trial court must also conduct a further inquiry into whether proposed testimony is sufficiently "relevant to the task at hand." *Daubert,* 509 U.S. at 597, 113 S.Ct. 2786. Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The Supreme Court has described the consideration of relevant evidence as one of "fit." *Daubert*, 509 U.S. at 591, 113 S.Ct. 2786. The trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact. Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has relevant "fit." *Id*.

With this guidance in mind, the Court will now examine the reliability and relevance of the four opinions offered in Dr. West's expert report, as elaborated upon in his deposition testimony.

>Opinion 1: Software development is an exacting task requiring intense concentration and close collaboration with users and among developers. Actions as described in the complaint filed by the Wildgrubes would have had a significant and negative impact on the ability of Richard Wildgrube and his development team to design, develop, and deploy software products.

Dr. West, who has significant experience and training as a software developer, including object-oriented software development like Windows, is qualified from his training and experience to offer expert testimony on the concentration and focus necessary to design, develop, and deploy software products. This testimony is reliable and is relevant to Plaintiffs' contention that Defendants' actions interfered with their ability to develop Windows-based software.

Dr. West, based on his observation of employees and students engaged in software development, opines that a computer programmer's productivity decreases by one-third to one-half and that the rate of errors introduced into computer software doubles or triples when a programmer is experiencing outside stress. Dr. West's testimony regarding the relationship between stress and productivity is not sufficiently supported to pass *Daubert's* reliability test. A witness "'relying solely or primarily on experience' must 'explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *United States v. Fredette*, 315 F.3d 1235, 1240 (10th Cir. 2003) (quoting Fed.R.Evid. 702 advisory committee's note). Dr. West testified that he is unaware of any specific study on the correlation between stress and productivity and that his opinion is based on the "common sense" observation that when people get upset, it can have an effect on their productivity. Dr. West's testimony regarding the relationship between stress and productivity based solely on his "common sense" observations is not supported by sufficient evidence and does not satisfy Rule 702's reliability requirements.

In addition, Dr. West has no adequate basis to testify as to the effect of Defendants' alleged

4

conduct on Mimics' product development because Dr. West admits that he is not familiar with Mimics' software and does not know what would have been involved in moving the Mimics programs from DOS to Windows, where Mimics was in the conversion process during the relevant time period, the level of knowledge Mimics' programmers possessed of object-based programming, what other stressors Mimics' programmers may have been experiencing, the reactions of Mimics' programmers to stress, or any other problems Mimics' programmers may have had that could have affected Mimics' plan to convert their software to Windows.  Without this knowledge, Dr. West's testimony as to the effect of Defendants' actions on Mimics' plan to convert to Windows is sheer speculation.

> Opinion 2:  Moving to a Windows based product (Windows version 3.1 and later) requires the mastery of both the Windows environment and the principles of object-oriented analysis and design--a new approach to software design that was integral to the Windows environment.  Mastery of this new software paradigm requires extensive study and practice.  Actions as described in the complaint would have had a significant and negative impact on the ability of all of Mimic's developers, and especially Richard Wildgrube, to become proficient in object analysis and design.

Dr. West opines that learning object-oriented design and programming takes approximately 4-12 months of dedicated study and full-time application of concepts in daily work while mastery requires an average of two years experience.  Dr. West bases this opinion on the "accepted industry metric" as well as his experience as a consultant and mentor to corporate software development teams and as a professor.  This opinion is adequately supported and is relevant to the question of whether the alleged disruptions could have affected Plaintiffs' ability to develop Windows-based software.

Dr. West further opines that the actions described by Plaintiffs in their Complaint would have had a negative effect on learning object-oriented design and programming.  This opinion is not adequately supported.  Dr. West acknowledges that he is not qualified by training or experience to

5

testify as to the effects of the stress caused by Defendants' actions on Richard Wildgrube because he has no personal knowledge of how Richard Wildgrube deals with stress. Dr. West also has no information regarding Richard Wildgrube's knowledge of object-oriented programing during the relevant time frame, no knowledge of other work demands on Richard Wildgrube, and no knowledge of other stress in Richard Wildgrube's life during the relevant time period.

Finally, Dr. West opines that based on observation of his students, persons under stress are unwilling to assume the additional stress induced by learning new skills. This opinion is insufficiently supported. Dr. West cites no research to support his opinion and admits that some people do learn new skills under stress.

> Opinion 3: Had the conversion of Mimic's products to Windows not been impeded by the actions described in the complaint, it is likely that the costs incurred in subsequent years to address Y2K concerns would have been reduced significantly.

Dr. West opines that Microsoft went to great lengths to make Windows year 2000 compliant and, if Mimics had been able to proceed with their Windows conversion in 1996-1997, it is likely that their costs in subsequent years to address Y2K problems would have been reduced by as much as one-third to one-half because they would have been able to rely on Microsoft supplied date technology. In his deposition testimony, Dr. West clarified that his testimony is that making Windows-based programs Y2K complaint was less costly than making DOS programs Y2K compliant because Microsoft supplied materials, tools, and documentation to make Windows-based programs Y2K complaint. It is unclear how this opinion is relevant to the issues in this case.[1]

---

[1] In their response, Plaintiffs describe Dr. West's third opinion as "address[ing] the conversion process itself" and substantiating "Plaintiffs' claim that to make their DOS programmes Y2K compliant was a waste of resources since the industry was moving away from DOS and to Windows." Plaintiffs appear to be confusing Dr. West's third and fourth opinions. As a result, Plaintiffs do not offer any argument regarding how the relative costs of making DOS and Windows-based programs Y2K compliant is relevant.

6

Plaintiffs are claiming damages for unnecessarily having to make their DOS software Y2K compliant and, therefore, the only relevant question is whether, but for Defendants' actions, Plaintiffs would not have incurred costs to make their DOS software Y2K compliant. The relative costs of making Windows and DOS programs Y2K compliant are not relevant to this question. Dr. West's proposed testimony on the relative costs of making DOS and Windows-based programs Y2K compliant fails the relevancy prong of the *Daubert* analysis and will be excluded.

Potential rebuttal testimony from Dr. West is not at issue in this motion and the Court does not reach the question of whether Dr. West's testimony regarding the degree to which Windows was Y2K compliant during the relevant time period is admissible on rebuttal.

> Opinion 4: The ten month disruption in business (as described in the compliant [sic] and culminating in the forced relocation of Mimics) forced Mimics to divert resources from product enhancement and optimization to mere maintenance, thereby causing Mimics to incur significant lost opportunity costs.

Plaintiffs are no longer seeking opportunity costs for the failure to convert to Windows as planned. Thus, Dr. West's testimony on Mimic's lost opportunity costs is irrelevant and will be excluded.

Dr. West's testimony on the industry move from DOS to Windows-based programs is relevant to Plaintiffs' position that it was a waste of resources to update Mimics' DOS programs to make them Y2K compliant because the industry was moving to Windows-based programs. Dr. West is qualified by training and experience to provide testimony on trends in the software industry. This testimony is both relevant and reliable and will not be excluded.

Defendants' remaining objections to Dr. West's testimony go to "the weight which the trier of fact should accord the evidence and do not make the testimony incredible." *Orth v. Emerson Elec. Co*., 980 F.2d 632, 637 (10th Cir. 1992). Nowhere does Rule 702 or *Daubert* require a

finding that an expert's proffered testimony reach absolute certainty with regard to the likely truth of a conclusion.

## **CONCLUSION**

**IT IS THEREFORE ORDERED** that Defendants' Motion in Limine to Exclude Testimony of David M. West, Ph. D., filed November 21, 2001, **[Doc. No. 196]**, is hereby

**GRANTED in part and DENIED in part**.  Dr. West's testimony as part of Plaintiffs' case-in-chief is admissible only as provided above.

    Dated this 22nd day of March, 2005.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

Attorney for Plaintiffs:
Michael Schwarz

Attorney for Defendants:
James P. Sullivan
Randy S. Bartell